IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CAESAR WHITE, JR.,          *
                            *
      Plaintiff,            *
                            *
vs.                         *
                            * CIVIL ACTION NO. 19-00116-TFM-B
LOUIS DEJOY,                *
Postmaster General,         *
United States Postal Service, *
                            *
      Defendant.            *

## REPORT AND RECOMMENDATION

This action is before the Court on cross motions for summary judgment filed by the Plaintiff, Caesar White, Jr., and the Defendant, Louis DeJoy, Postmaster General, United States Postal Service (Docs. 53, 56). The motions, which are fully briefed, have been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned **RECOMMENDS**, for the reasons stated herein, that Plaintiff's motion for summary judgment (Doc. 53) be **DENIED**, that Defendant's motion for summary judgment (Doc. 56) be **GRANTED**, and that this action be **DISMISSED with prejudice.**

## I.    INTRODUCTION

Plaintiff Caesar White, Jr. ("White"), an employee of the United States Postal Service ("Postal Service"), initiated this

action on March 12, 2019 by filing a complaint alleging retaliation, harassment, and employment discrimination. (Doc. 1). Construed liberally, White's complaint contains allegations of retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and (arguably) the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").[1] (Id. at 1-2). White also alleges discriminatory disparate treatment based on his age, in violation of the ADEA. (Id. at 2). According to White's complaint, he filed an Occupational Safety and Health Administration ("OSHA") complaint relating to working conditions "[o]n or about August of 2016," and he later filed an Equal Employment Opportunity ("EEO") complaint for retaliation. (Id.). His EEO complaint was amended in October 2017 "to include age discrimination." (Id.). White asserts that he was subjected to numerous unjust write-ups and his work was unfairly removed from him in retaliation for filing OSHA and EEO complaints, and that younger workers were used to perform his work while other employees were allowed to perform their own work. (Id. at 1-2).

---

[1] White did not present his claims for relief in the form of separate counts. Instead, he merely alleged that he "feel[s]" actions taken by his supervisors violated Title VII and the ADEA. (See Doc. 1).

## II.  RELEVANT UNDISPUTED FACTS[2]

White was hired by the Postal Service in 2010 at the age of forty-seven.[3] (Doc. 55-3 at 2).  At all times relevant to this action, White was assigned as a career letter carrier at the Springhill Post Office in Mobile, Alabama.  (Id.).  As a letter carrier, White's work was divided into office duties consisting of casing and loading his mail prior to delivery, and street duties consisting of delivering and collecting mail.  (Doc. 55-4 at 1-2).

Carriers' routes are designed to have eight hours of regular mail volume, and carriers are expected to deliver all mail for their routes within eight hours.  (Doc. 37-4 at 2; Doc. 37-5 at 1; Doc. 55-4 at 3).  Once the carrier is notified of the volume of mail for his route, he must notify management if he believes that he cannot complete the delivery within the expected eight hours.

---

[2] The facts set forth in this opinion have been gleaned from Defendant's statement of facts claimed to be undisputed (as White did not file a statement of facts with his motion) and the Court's own examination of the evidentiary record.  The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the non-moving parties.  See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002); Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).  Thus, with respect to each motion for summary judgment, the non-movant's evidence is taken as true and all justifiable inferences are drawn in that party's favor.

[3] White's date of birth is listed as January 10, 1963. (Doc. 34 at 10).

(Doc. 55-3 at 26; Doc. 55-6 at 4). The carrier notifies management by submitting a PS Form 3996, Carrier – Auxiliary Control form ("Form 3996"). (Doc. 55-3 at 26-29; Doc. 55-6 at 4-5). In completing the form, the carrier must provide the reason he cannot deliver the mail within eight hours and use his professional judgment to estimate the additional time or assistance required to complete the route. (Id.). An estimate is deemed "unprofessional" when it substantially varies from the actual volume of mail distributed to the route or from actual delivery time after the fact. (Doc. 37-4 at 2).

Upon submission of the Form 3996, management evaluates the propriety of the request, taking into account past performance, the facility's budget, overall mail volume that day, and the availability of other carriers to provide auxiliary assistance. (Doc. 55-4 at 3; Doc. 55-6 at 13). The decision to approve, deny, or modify the request for overtime or auxiliary assistance is within the sole discretion of management based on their professional expertise and the specific facts and circumstances of each request. (Doc. 55-3 at 21, 33; Doc. 55-4 at 3; Doc. 55-6 at 13).

At all times relevant to this action, White was a member of the National Association of Letter Carriers ("NALC") Union. (Doc. 37-4 at 2). The NALC and Postal Service have entered into a series of collectively bargained agreements ("National Agreement").

(Id.).  Pursuant to the National Agreement, carriers may volunteer
for overtime opportunities through the quarterly overtime-desired
list ("OTDL") on the days that they are available to work.  (Doc.
37-4 at 2; Doc. 37-6 at 4-6).  Management is responsible for
ensuring that each available OTDL carrier receives similar
opportunities to accumulate overtime hours during a quarter.  (Doc.
37-4 at 2; Doc. 37-6 at 5).  However, under the National Agreement,
recourse to the overtime list is not necessary in the case of a
letter carrier working on the employee's own route on one of the
employee's regularly scheduled days.  (Id.).

    During the periods relevant to this lawsuit, White's first
level supervisor at the Springhill Post Office was Customer
Services Supervisor John Langham, and his second level supervisor
was Customer Services Manager Oscar Naylor.  (Doc. 34 at 9; Doc.
55-4 at 1; Doc. 55-5 at 1).[4]

    Starting in April 2016 and continuing to at least May 2017,
management counseled White, both orally and in writing, regarding
alleged performance issues.[5]  The discipline issued to White during

---

[4] In his response in opposition to Defendant's motion, White
acknowledges that Supervisor Langham served as his First Level
Supervisor, but he states that "all final decisions as to the
running and operational procedures where [sic] made by Manager
Oscar Naylor at the USPS Springhill Station, in Mobile AL."  (Doc.
66 at 3).

[5] The record reflects that in April 2016, supervisor Jackie
Singleton issued White two Letters of Warning ("LOW") for failure
to follow instructions on April 4, 2016 regarding time-wasting

this period was administrative in nature and did not result in any loss of pay. (Doc. 55-3 at 56; Doc. 55-4 at 6). Pursuant to the National Agreement, employee discipline expires after two years from the date of issuance. (Doc. 55-4 at 6). White's personnel file does not contain any disciplinary records. (Id.).

On August 2, 2016, White anonymously filed OSHA Safety/Health Complaint No. 1119894. (Doc. 55-1 at 1; Doc. 61-1 at 2). He alleged inadequate water and comfort breaks and that employees

---

practices and unsafe driving. (Doc. 55-4 at 5). Supervisor Frank Carstaphen issued White a LOW on May 26, 2016 for failure to follow instructions on May 4, 2016. (Doc. 55-4 at 5; Doc. 55-7 at 2). On October 11, 2016, Supervisor Langham issued White a Notice of 07 Day No-time Suspension for unsatisfactory performance, lack of diligence and promptness, and failing to obey supervisor instructions. (Doc. 55-4 at 5; Doc. 55-7 at 1-2). On November 5, 2016, Supervisor Langham issued White a LOW for failure to complete assignments within their scheduled time on multiple dates. (Doc. 55-4 at 5; Doc. 55-7 at 3-4).

On April 10, 2017, Supervisor Langham issued White a LOW charging White with failure to follow instructions, delaying the mail, and willful insubordination. (Doc. 55-4 at 5; Doc. 55-7 at 5-6). On April 12, 2017, Supervisor Langham issued White another LOW for actions allegedly taken on April 3, 2017, including inflating his overtime projection, taking an extended lunch break, and refusing to acknowledge or answer questions from management. (Doc. 55-4 at 5; Doc. 55-5 at 2; Doc. 55-7 at 7-8). Supervisor Langham issued White yet another LOW on April 25, 2017 for engaging in a controversial conversation with a customer while on duty and unsatisfactory work performance, after a customer complained that White had engaged in a verbal dispute with her on April 18, 2017. (Doc. 55-4 at 5; Doc. 55-5 at 2; Doc. 55-7 at 9-10).

On May 4, 2017, Supervisor Langham issued White a Notice of 07 Day No-time Suspension after Langham allegedly observed White operating his postal vehicle in an unsafe manner on April 29, 2017. (Doc. 55-4 at 5; Doc. 55-7 at 11-14).

were exposed to back injuries by being required to lift heavy tubs loaded with books. (Doc. 61-1 at 2). In response to White's OSHA complaint, an OSHA compliance officer performed an unannounced inspection of White's workplace on August 23, 2016. (Id.). No violations were substantiated; thus, no citations were issued as a result of the inspection. (Id.).

On August 30, 2016, White sought pre-complaint counseling from the Postal Service's EEO Office. (Doc. 55-1). He alleged that he suffered retaliation for filing OSHA Complaint No. 1119894. (Id. at 1). On September 16, 2016, Manager Naylor became aware of White's EEO activity after being contacted by an EEO Alternative Dispute Resolution Specialist. (Doc. 55-4 at 4).

On September 23, 2016, White filed OSHA Complaint No. 4-2100-16-064, alleging that he was harassed and followed along his mail route by Manager Naylor on or about September 15, 2016 in retaliation for filing the OSHA Safety/Health complaint on August 2, 2016. (Doc. 61-1 at 1-2). On April 5, 2017, the Department of Labor issued a written finding of no reasonable cause to believe that the Postal Service retaliated against White for filing the OSHA Safety/Health complaint on August 2, 2016. (Doc. 61-1).

On November 29, 2016, White filed a formal EEO Complaint alleging retaliation by Manager Naylor. (Doc. 55-2). Supervisor Langham became aware of White's EEO activity on January 13, 2017,

when an EEO investigator contacted him about White's complaint. (Doc. 55-5 at 2).

### III. **PROCEDURAL HISTORY**

As noted *supra*, White filed this action on March 12, 2019. (Doc. 1). Currently pending before the Court is White's motion for summary judgment (Doc. 53). The thirteen-page, handwritten document is rambling and difficult to decipher. It does not include a statement of all facts relied upon and the specific record citation supporting each fact, as required by S.D. Ala. CivLR 56.[6] Moreover, White did not include any supporting brief or evidentiary materials. He instead appears to rely on discovery responses, some of which are not a part of the record before the Court.[7] (See id.). Defendant filed a response in opposition to White's motion and supporting exhibits. (Docs. 61, 62).

---

[6] This Court's Civil Local Rule 56 states, in relevant part:

> Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Civil Local Rule 7. With [exceptions not relevant to this case], the following additional requirements must be met:
>
> **(a) Movant's Supporting Materials.** The movant must file a brief that includes: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record; and (2) argument supported by legal authority as appropriate. The movant must also file all evidence relied upon. . . .

S.D. Ala. CivLR 56.

[7] For example, White cites "Defendant(s) Supplemental Response to Plaintiff's Request for Discovery Production dated July 16, 2020,"

Also pending before the Court are Defendant's motion for summary judgment and supporting materials (Docs. 55, 56). White filed a response and amended response in opposition to Defendant's motion. (Docs. 65, 66). In his amended response, White objects to some of the factual assertions contained in Defendant's motion on the ground that Defendant altered or "edited" some of the Time and Attendance Control System ("TACS") reports, and that Defendant seeks to rely on evidence, some of which was not provided to him during discovery. (Doc. 66 at 6, 9-13). He argues that the factual assertions should thus be stricken. (Id.). Defendant filed a reply to White's responses, along with supporting exhibits. (Docs. 68, 69). Given that the parties' motions have been fully briefed, they are now ripe for resolution.

Before turning to the merits of the motions, the undersigned finds that White's assertions regarding the TACS reports are wholly unsupported. Defendant has proffered sworn testimony that the TACS reports provide a line-by-line detail of an individual employee's workday, regular schedule, official assignment, pay location or duty station, and leave balances, but do not show which employees were available for overtime on any given day, which employees accepted or declined overtime on any route, or the needs

---

but White failed to append a copy of the response to his motion. (See Doc. 53). Because the response is not included in White's materials pursuant to Civil Local Rule 56(a), it is not part of the record in this case.

of the service that necessitated approval or disapproval of specific overtime requests on any given route. (See Doc. 37-4). White has not come forth with any evidence to dispute Defendant's showing. Accordingly, White's request to strike various factual assertions due to alleged altered TACS reports is denied.

## IV.  **SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[T]he substantive law will identify which facts are material." Id. at 248. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but merely "determine[s] whether there is a genuine issue for trial." Id. at 249.

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by

'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam) (citing Celotex, 477 U.S. at 324). The court must view facts and draw all reasonable inferences in favor of the non-moving party. Moore v. Reese, 637 F.3d 1220, 1231 (11th Cir. 2011). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment." Murray v. Holiday Isle, LLC, 620 F. Supp. 2d 1302, 1307 (S.D. Ala. 2009) (quoting Godard v. Ala. Pilot, Inc., 485 F. Supp. 2d 1284, 1291 (S.D. Ala. 2007)). Indeed, the Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted); see also Wermager v. Cormorant Tp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983) (stating that "the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits").

"Nonetheless, 'cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts.'" Murray, 620 F. Supp. 2d at 1307 (quoting Godard, 485 F. Supp. 2d at 1291).

Finally, the Court notes that "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, in the context of summary judgment, even though *pro se* pleadings are entitled to a more lenient interpretation, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

## V. DISCUSSION

### A. Title VII.

As best the Court can discern, White asserts that Defendant subjected him to retaliation and a hostile work environment in violation of Title VII (and perhaps the ADEA) by subjecting him to discipline that violated the progressive discipline requirements under the National Agreement, assigning work (on his route) to co-

workers that White could have performed as overtime, verbally reprimanding and threatening him with discipline in response to his submission of Form 3996 auxiliary assistance requests, and restricting his work functions.

A claim of retaliation such as White's that relies on circumstantial evidence is analyzed according to the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, the plaintiff must first establish a prima facie case by showing that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was some causal relationship between the protected activity and the adverse action. Bryant v. Jones, 575 F.3d 1281, 1307-08 (11th Cir. 2009).[8] "Once a prima facie case has been demonstrated, the defendant must proffer a legitimate nondiscriminatory reason for the adverse employment action." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999). If the defendant does so, the

_____

[8] "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). However, "[a]t the prima facie stage, the plaintiff 'need only establish that the protected activity and the adverse action were not wholly unrelated.'" Frazier v. Sec'y, Dep't of Health & Human Servs., 710 F. App'x 864, 870 (11th Cir. 2017) (per curiam) (quoting Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999)).

plaintiff bears "the burden of offering evidence from which a jury could conclude that these reasons were a 'pretextual ruse for retaliation.'" Id. (citation omitted).

The Eleventh Circuit has also recognized a Title VII claim for retaliatory hostile work environment. See Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012). "To establish that claim, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he has been subject to unwelcome harassment; (3) the harassment was based on his engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment." Kelly v. Dun & Bradstreet, Inc., 641 F. App'x 922, 923 (11th Cir. 2016) (per curiam).

Title VII acts to shield employees from retaliation for certain protected practices. The statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Title VII's anti-retaliation provision sets forth two distinct types of protected conduct. "An employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful practice by [Title VII]' (the opposition

clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]' (the participation clause)." <u>Clover v. Total Sys. Servs., Inc.</u>, 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)).

White contends that he engaged in protected activities when he (1) filed an OSHA Safety/Health complaint concerning working conditions and (2) initiated a retaliation complaint with the Postal Service's EEO.[9] (Doc. 48 at 1-3). As noted *supra*, the record reveals that White filed an OSHA Safety/Health complaint on August 2, 2016, alleging inadequate water and comfort breaks and that employees were exposed to back injuries by being required to lift heavy tubs. (Doc. 61-1 at 2). On August 30, 2016, White contacted the Postal Service's EEO office. (Doc. 55-1 at 1). In the Information for Pre-Complaint Counseling form that White

---

[9] Specifically, when asked to articulate his protected activities, White stated in his interrogatory responses that he "initiated a occupational & safety complaint around July or August of 2016, regarding being subjected to heat related working conditions, and being denied attempted breaks associated with heat or summer related conditions, and being written up (letter of warnings) for taking such breaks! Now, the OSHA Act concerning complaints about unsafe or unhealthful workplace conditions, are protected activity covered under the act in 11(c). . . . Then I afterwards, in August or September of 2016, initiated a retaliation complaint with the Equal Employment Opportunity for the United States Postal Service . . ., which write ups started for activities that other similar situated employee were doing, but not being written up for doing or performing the same work related activities!" (Doc. 48 at 1-2).

completed on September 7, 2016, White alleged that he had suffered "[r]etaliation for participation in protected EEO activity." (Id.). He listed the protected EEO activity that he felt caused him to be retaliated against as "OSHA Complaint No. 1119894" filed in August 2016. (Id.). When asked to describe the subject incident or action, White stated:

> After filing a response (amended) to Springhill management response regarding OSHA #1119894, the Springhill management, especially Manager Naylor, began harassing me more on the issues for which I initiated the complaint about: unsafe working conditions, which resulted in the Springhill management team harassing and creating a hostile work environment for myself, which the frequency increased.

(Id.).

In his formal EEO complaint, filed on November 29, 2016, White alleged unspecified retaliation and stated that Manager Naylor was "the person who committed the alleged violations." (Doc. 55-2). When asked on the EEO complaint form to explain the alleged discrimination, White wrote:

> I have attached & enclosed documentation that have lead up to the filing of this document, which will show that I was written up constantly for doing my job according to national agreement standards & following M-41 & other USPS standards which lead to filing retaliation claims because of unethical actions by Manager Oscar Naylor.

(Id.). When asked to list his requested remedy, White stated:

> I'm seeking Manager Naylor's be moved to another installation, because he has shown, and continues to show that he will not comply with a "zero contact provision" when it comes to me. However, if I have to obtain legal counsel, I will seek punitive damages!

(Id.).

The Court finds that White has failed to establish the protected activity element necessary to bring a retaliation claim under Title VII.  None of White's alleged or conceivable "protected" activities, namely, his August 2016 OSHA Safety/Health complaint, his September 2016 OSHA Whistleblower complaint, his initiation of EEO counseling in August 2016, and his filing of the formal EEO complaint in November 2016, constitute protected activity under Title VII.

> In order for an employee engaging in opposition activity
> to be protected under the anti-retaliation provision of
> Title VII, he or she must be opposing conduct that is
> made an "unlawful employment practice" by Title VII.
> Title VII defines an "unlawful employment practice" as,
> *inter alia*, discrimination against an employee "with
> respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's
> race, color, religion, sex, or national origin."

Pinder v. John Marshall Law School, LLC, 11 F. Supp. 3d 1208, 1263 (N.D. Ga. 2014) (quoting 42 U.S.C. § 2000e-2(a)), reconsideration denied, 2014 U.S. Dist. LEXIS 84800, 2014 WL 2858658 (N.D. Ga. June 23, 2014).  Stated differently, "it is not enough for a plaintiff to show that he opposed garden-variety unfairness or harsh treatment in the workplace; he is only protected from retaliation if the practice he opposed or complained about is specifically prohibited by Title VII."  Id.; see also Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir.

1995) (per curiam) ("Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII.") (emphasis in original); Bicknell v. City of St. Petersburg, 2006 U.S. Dist. LEXIS 8789, at *20, 2006 WL 560167, at *6 (M.D. Fla. Mar. 7, 2006) ("An employee cannot be said to have a subjectively or objectively reasonable belief that she opposed an unlawful employment practice when her opposition is based on conduct that is not proscribed by Title VII.").

White does not allege that Defendant engaged in discrimination on any basis covered by Title VII or that he opposed any discriminatory practice prohibited by Title VII – or the ADEA, for that matter. Instead, the record clearly reflects White's assertion, both in his EEO filings and in his submissions to this Court, that he was retaliated against for alleging OSHA violations and complaining of unsafe working conditions. "Courts evaluating claims based on facts similar to those in the present case have consistently held that an employee who has reported OSHA violations or complained about unsafe working conditions has not engaged in statutorily protected activity" under Title VII. Langford v. Magnolia Advanced Materials, Inc., 2017 U.S. Dist. LEXIS 217856, at *42-43, 2017 WL 5203048, at *15 (N.D. Ga. Jan. 3, 2017) (collecting cases), report and recommendation adopted, 2017 U.S. Dist. LEXIS 217859, 2017 WL 5202889 (N.D. Ga. Feb. 13, 2017), aff'd, 709 F. App'x 639 (11th Cir. 2017) (per curiam); see, e.g.,

<u>Washington v. M. Hanna Const. Inc.</u>, 299 F. App'x 399, 401 (5th Cir. 2008) (per curiam) ("Because Title VII does not encompass violations of OSHA, <u>see</u> 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating on the basis of race, color, religion, sex or national origin), Plaintiff's alleged reporting of M. Hanna to authorities for violating OSHA does not qualify as protected activity under Title VII, <u>see</u> § 2000e-3(a) (prohibiting discrimination for opposing any practice made unlawful by Title VII, or making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII)."). Therefore, White cannot establish that he engaged in protected activity under Title VII's opposition clause.

Moreover, the mere fact that White sought EEO counseling[10] and subsequently filed an EEO complaint alleging retaliation is insufficient to satisfy the protected activity element under Title VII's participation clause, because White's allegations had nothing to do with discrimination based on race, color, religion, sex, or national origin. <u>See</u> <u>Kelly</u>, 641 F. App'x at 923-24 ("Complaints of unfair treatment, absent evidence of race-, sex-, or national-origin-based discriminatory animus do not constitute protected activity for Title VII retaliation."). Instead, White

---

[10] <u>See</u> <u>Wesolowski v. Napolitano</u>, 2013 U.S. Dist. LEXIS 42525, at *14-19, 2013 WL 1286207, at *6-7 (S.D. Ga. Mar. 25, 2013) (finding that pre-complaint contact with an EEO counselor was "sufficient to trigger the protection of the participation clause").

alleged retaliation by his supervisors for his filing of an OSHA complaint alleging unsafe working conditions. The participation clause protects an employee who has "made a charge . . . or participated . . . in an investigation . . . under *this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added). As the Eleventh Circuit and several other circuits have noted, "'this subchapter' makes it unlawful to discriminate based on an individual's race, religion, sex, or national origin." Langford, 709 F. App'x at 643; Slagle v. Cnty. of Clarion, 435 F.3d 262, 266-67 (3d Cir. 2006) ("An employee filing a charge is protected only if the charge is brought under 'this subchapter.' The phrase 'this subchapter' refers specifically to 42 U.S.C. §§ 2000e through 2000e-17, the provisions that set forth an employee's rights when an employer has discriminated against him or her on the basis of race, color, sex, religion, or national origin. It follows that a charge 'under this subchapter' is a charge that alleges discrimination on the basis of those prohibited grounds."); Balazs v. Liebenthal, 32 F.3d 151, 159-60 (4th Cir. 1994) (holding that a plaintiff's retaliation claim failed because his EEOC charge had "nothing to do with his race, color, religion, sex or national origin"); Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988) (holding that § 2000e-3(a) only applied if the charge filed alleged discrimination prohibited by Title VII). Thus, just as Title VII does not prohibit unfair treatment based on anything

other than a protected ground, see Coutu, 47 F.3d at 1074, it also does not protect "a person from discrimination based on the filing of an EEOC charge not based on a protected ground." See Langford, 709 F. App'x at 643; see also Langford, 2017 U.S. Dist. LEXIS 217856, at *47, 2017 WL 5203048, at *17 ("Plaintiff's complaints in the EEOC charge about unsafe work premises and about being retaliated against after OSHA visited Defendant's workplace are not protected activity under Title VII or § 1981.")[11]; cf. Booth v. Pasco Cnty., Fla., 829 F. Supp. 2d 1180, 1199 (M.D. Fla. 2011) (granting summary judgment on plaintiff's § 1981 retaliation claim because his EEOC charge alleged religious discrimination, which is not prohibited by § 1981).

Because the activities on which White relies to establish the protected activity element of his retaliation claim do not constitute statutorily protected activity under Title VII, he has failed to establish a prima facie case of retaliation or retaliatory hostile work environment in violation of Title VII. Thus, Defendant is entitled to summary judgment on White's Title VII retaliation and retaliatory hostile work environment claims.

---

[11] White's motion for summary judgment erroneously cites 42 U.S.C. § 1981 in connection with his retaliation claim, despite the fact that White's complaint does not allege retaliation in violation of § 1981 and despite the fact that White has neither alleged nor presented any evidence of racial discrimination.

**B. ADEA Retaliation and Retaliatory Hostile Work Environment.**

To establish a prima facie case of retaliation in violation of the ADEA, a plaintiff must show that: "(1) he engaged in statutorily protected conduct; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006). The Eleventh Circuit has "recognized that a hostile work environment can constitute an adverse employment action under the second element above." Kelly v. Dun & Bradstreet, Inc., 2014 U.S. Dist. LEXIS 198480, at *5, 2014 WL 12691596, at *2 (N.D. Ga. Sept. 12, 2014) (citing Gowski, 682 F.3d at 1312), report and recommendation adopted, 2015 U.S. Dist. LEXIS 191199, 2015 WL 13322124 (N.D. Ga. Mar. 30, 2015), aff'd, 641 F. App'x 922 (11th Cir. 2016). While it is not clear from White's pleadings whether he is attempting to assert claims for retaliation and retaliatory hostile work environment under the ADEA, to the extent he does, he has failed to establish a prima facie case.

Similar to Title VII, "the ADEA prohibits an employer from discriminating against an employee because the employee has 'opposed any practice made unlawful' by the ADEA or because the employee has 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation' under

the ADEA." Hopkins v. Sam's W., Inc., 216 F. Supp. 3d 1322, 1336–37 (N.D. Ala. 2016) (quoting 29 U.S.C. § 623(d)). Under the ADEA, "an employee engages in protected activity by either opposing unlawful age discrimination or participating in proceedings relating to unlawful discrimination." Klastow v. Newtown Friends Sch., 515 F. App'x 130, 132 (3d Cir. 2013) (per curiam); see also Butts v. McCullough, 237 F. App'x 1, 5 (6th Cir. 2007) (stating that there are "two types of conduct against which an employer cannot retaliate—employee opposition to age discrimination, and employee participation in an investigation of age discrimination"). "Thus, any successful retaliation claim must have at its core a protected activity, which is in turn defined by reference to what is unlawful under . . . the ADEA." O'Malley v. Fairleigh Dickinson Univ., 2014 U.S. Dist. LEXIS 2098, at *46, 2014 WL 67280, at *14 (D.N.J. Jan. 7, 2014).

As previously noted in connection with White's putative Title VII claims, the only alleged protected activities that White identifies are his OSHA complaint and his initiation of an EEO complaint alleging retaliation in August or September 2016. However, White's September 2016 Information for Pre-Complaint Counseling form made clear that he was alleging retaliation for filing an OSHA complaint "about unsafe working conditions," which is not a protected activity under the ADEA. See Mayers v. Shaw Indus., 2010 U.S. Dist. LEXIS 132330, at *11, 2010 WL 5158418, at

*4 (D.S.C. Nov. 23, 2010) ("Mayers cannot show that his reporting of an alleged safety violation amounts to protected activity under Title VII or the ADEA."), report and recommendation adopted, 2010 U.S. Dist. LEXIS 132381, 2010 WL 5158415 (D.S.C. Dec. 14, 2010). And, in his November 2016 EEO complaint, White continued to allege retaliation unconnected with any protected activity under the ADEA. Notably, White did not check the box alleging discrimination based on age, he did not specify his age, and he did not provide any facts suggesting discrimination or retaliation in violation of the ADEA (or, as already discussed, Title VII). (See Doc. 55-2). Thus, neither the OSHA complaints nor the EEO filings upon which White relies qualify as protected activity for purposes of the ADEA, because they are unrelated to age discrimination. See Smith v. Lafayette Bank & Tr. Co., 674 F.3d 655, 658 (7th Cir. 2012) ("In order for Smith's complaints to constitute protected activity, they must include an objection to discrimination on the basis of age."); Machin v. Leo Burnett, Inc., 376 F. Supp. 2d 188, 204-05 (D.P.R. 2005) ("In order to prevail in a retaliation claim an individual must either oppose age-based practices or participate in ADEA-related proceedings. Thus, in order to trigger statutory coverage plaintiff must specifically base his dissatisfaction or actions on ageist grounds."); Grenier v. Spencer, 2013 U.S. Dist. LEXIS 7935, at *16, 2013 WL 211130, at *6 (E.D. Cal. Jan. 18, 2013) ("The ADEA provides no remedy for

opposing unlawful practices by fellow employees unrelated to discrimination; it only protects against unlawful discrimination based on age. The ADEA only prohibits retaliation against someone who files a charge 'under this chapter' or who opposes 'any practice made unlawful by *this section*.'") (emphasis in original). In the absence of evidence of protected activity, White cannot establish a prima facie case of ADEA retaliation.[12]

The Court recognizes White's assertion that an "Equal Employment Administrative Law Judge in October of 2017" "amended the matter to include 'Age Discrimination,' due to work being taken and given to younger worker[s] to perform, which [White] could have performed [himself]." (See Doc. 48 at 3; Doc. 53 at 5).

---

[12] Even assuming *arguendo* that White's EEO activity in the latter half of 2016 constituted protected activity under the ADEA, White cannot show a causal relationship between that activity and any employment actions taken prior to September 16, 2016. The record reflects that White began receiving disciplinary write-ups for alleged performance deficiencies in April 2016, almost five months before he sought EEO counseling. Additionally, Defendant has presented unrebutted evidence that Manager Naylor did not become aware of White's EEO activity alleging OSHA-related violations until September 16, 2016, and that Supervisor Langham did not become aware of White's EEO filing until January 13, 2017. (See Doc. 55-4 at 4; Doc. 55-5 at 2); see also Stone v. Geico Gen. Ins. Co., 279 F. App'x 821, 824 (11th Cir. 2008) (per curiam) (stating that "the protected activity must be known to the decision-maker who takes the adverse action"). "[C]onduct which occurs prior to the time an employer is even aware of an EEO charge cannot be considered 'in retaliation' and is not actionable as part of a retaliation claim." Gloetzner v. Lynch, 225 F. Supp. 3d 1329, 1360 (N.D. Fla. 2016). Thus, at minimum, White cannot establish that any actions or decisions taken by his supervisors prior to September 16, 2016 constituted retaliation for protected activity.

Defendant states that White "amended his EEO complaint four times, with the last Agency acceptance dated of May 18, 2017. On October 15, 2017, the presiding ALJ allowed [White] to add claims under the [ADEA] to cure non-jurisdictional OSHA claims." (Doc. 56 at 2). However, the acts of retaliation alleged by White in this lawsuit occurred between August 2016 and July of 2017, well before the ALJ's October 2017 amendment. Moreover, White does not allege or offer any facts suggesting that any of his communications or EEO filings during or prior to the period from August 2016 to July 2017 related to concerns about age discrimination or provided any notice that he opposed a practice made unlawful by the ADEA. Accordingly, White has failed to establish a prima facie case of retaliation under the ADEA, and Defendant is entitled to summary judgment on White's ADEA retaliation claim.

**C.    Age Discrimination.**

In addition to his allegations of retaliation and harassment, White alleges that he was "targeted for adverse working conditions by use of younger workers," and that "younger workers were use[d] to do [his] work for [him], when others were allowed to do their own work[.]" (Doc. 1 at 1–2). White expounded on this claim during his deposition and asserted that when he submitted Form 3996 auxiliary requests to inform management that he would be unable to complete all of his duties within eight hours, Manager Naylor chose not to give him overtime to complete his duties and

instead elected to assign the additional work "to younger workers and . . . to other workers," while other employees who made auxiliary requests were assigned overtime, whether they desired overtime or not. (See Doc. 55-3 at 17-37).

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). ADEA discrimination claims based on circumstantial evidence are evaluated under the McDonnell Douglas framework. Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013). Under this framework, a plaintiff must first establish a prima facie case of discrimination by "showing he was: (1) a member of the protected class; (2) qualified for his current position; (3) subject to adverse employment action; and (4) treated less favorably than any younger, similarly situated employee." East v. Clayton Cnty., Ga., 436 F. App'x 904, 911 (11th Cir. 2011) (per curiam).[13] "If the plaintiff satisfies this burden, the employer then must offer a legitimate, non-discriminatory reason for the employment action." Mitchell v. USBI Co., 186 F.3d 1352, 1354

---

[13] Defendant does not dispute that White was a member of the protected age group and was qualified for his position. (See Doc. 56 at 27).

(11th Cir. 1999) (per curiam). "If the employer proffers a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the employer's reason is a pretext." Liebman v. Metro. Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015).

Here, even if the Court assumes *arguendo* that White can establish a prima facie case, White's ADEA age discrimination claim fails. Defendant has provided legitimate, nondiscriminatory reasons for the disciplinary write-ups issued to White and for management's discretionary decisions regarding auxiliary assistance requests. White's supervisors, Naylor and Langham, both attested that none of their actions were taken due to White's age, and Defendant has presented evidence in the form of affidavits and disciplinary records that White engaged in time-wasting practices, submitted inflated and unprofessional estimates of overtime, failed to complete tasks and meet performance standards, failed or refused to follow instructions, engaged in unsafe driving practices, and engaged in a verbal dispute with a customer. (See Docs. 55-4, 55-5, 55-7).

For his part, White has essentially alleged that he was singled out for unfair treatment due to his OSHA complaint by being subjected to unjust disciplinary write-ups and not being permitted to work overtime when he submitted Form 3996 auxiliary assistance requests. (See Doc. 53 at 2-5; Doc. 55-3 at 10-15). White's

statements indicate that he alone was singled out for disciplinary write-ups and denial of overtime while his co-workers, *regardless of their age*, did not receive the same unfavorable treatment. (See Doc. 53 at 5 ("[O]ther co-workers that were over 40 and under 40 did not receive the harassment or unfavorable treatment that the plaintiff was regularly subjected to . . . ."); Doc. 55-3 at 16-17 ("None of the other employees, similarly situated letter carriers or city carrier assistants at the Springhill station between this time" were written up except White); Doc. 55-3 at 18 (White's overtime was taken away and given to younger workers "[a]nd other workers"); Doc. 55-3 at 35 ("It's given to younger individuals to perform the overtime or given to other regular carriers as overtime."); Doc. 55-3 at 37 ("It was just me who he would forbid from making overtime.")).

White's assertions unambiguously establish that, to the extent he was treated differently with respect to discipline and auxiliary assistance and overtime, that difference was not based on his age, even under White's professed theory of liability. See Page v. Winn-Dixie Montgomery, Inc., 702 F. Supp. 2d 1334, 1354 (S.D. Ala. 2010) (finding that plaintiff's race discrimination claim failed where the plaintiff's "beef" was not that she was treated differently than white employees, but that she was treated differently than other employees, some of whom were white, and some of whom were black). As White has failed to meet his burden

of showing that Defendant's stated reasons for issuing discipline and assigning auxiliary assistance were a pretext for age discrimination, Defendant is entitled to summary judgment on White's ADEA age discrimination claim.

## VI.  CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 53) be **DENIED,** that Defendant's motion for summary judgment (Doc. 56) be **GRANTED,** and this action be **DISMISSED with prejudice.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review

on appeal for plain error if necessary in the interests of justice."
11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **February, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**